```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
GINETTE NELLY SCHENCK,                                :
                                                      :
                              Plaintiff,              :      14 Civ. 1445 (KPF)
                                                      :
                      v.                              :      OPINION AND ORDER
                                                      :
COMMISSIONER OF SOCIAL SECURITY,                      :
                                                      :
                              Defendant.              :
                                                      :
------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 16, 2015

KATHERINE POLK FAILLA, District Judge:

      Plaintiff Ginette Nelly Schenck filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Acting Commissioner of Social Security (the "Commissioner"), finding that Plaintiff had been overpaid Supplemental Security Income ("SSI") benefits from December 2009 to February 2012, that she remained ineligible for SSI benefits, and that she was not entitled to a waiver of recovery of such benefits under the Social Security Act (the "Act"). The Commissioner has moved for judgment on the pleadings. Because the Commissioner's decision is supported by substantial evidence, Defendant's motion is granted.

## BACKGROUND[1]

### A.  Factual Background

#### 1.  The Initial Finding of Plaintiff's Ineligibility

Plaintiff first began receiving SSI benefits in August 1976, at the age of 39 (she is now 78). (SSA Rec. 27, 95). On December 11, 2009, the Social Security Administration (the "SSA") issued her a Notice of Planned Action (the "December 2009 Notice"), informing Plaintiff that as of December 1, 2009, she was no longer eligible for monthly SSI benefits because she owned resources worth more than $2,000. (*Id.* at 103-14). The December 2009 Notice calculated Plaintiff's ineligibility for December 2009 based upon a Chase checking account containing $3,000 and a Chase savings account containing $1,199.09, totaling $4,199.09, and for January 2010 based upon the $3,000 Chase checking account alone. (*Id.* at 113-14). The December 2009 Notice also gave Plaintiff certain information, including the definition of the term "resources" as used by the SSA; examples of types of resources; the qualifications necessary to continue to receive SSI benefits; and Plaintiff's options to challenge the determination and continue receiving SSI benefits. (*Id.* at 103-12). Although Plaintiff was to stop receiving benefits beginning in January 2010 (*id.* at 103), the SSA continued to pay her (for reasons not reflected in the record) until March 2012 (*id.* at 28-29, 44).

---

[1]  The facts contained in this Opinion are drawn from the Social Security Administrative Record ("SSA Rec.") (Dkt. #9) filed by the Commissioner as part of her answer. For convenience, the Commissioner's supporting memorandum of law (Dkt. #12) is referred to as "Def. Br."; Plaintiff's opposition (Dkt. #15) as "Pl. Opp."; and Defendant's reply letter (Dkt. #17) as "Def. Opp."

On February 26, 2010, the SSA issued Plaintiff a new Notice of Planned Action (the "February 2010 Notice"), informing her once again that she was ineligible for SSI benefits as of December 1, 2009, and letting her know that she would stop receiving benefits beginning in April 2010. (SSA Rec. 115-24). The February 2010 Notice provided the same general information as the December 2009 Notice (*id.* at 115-21), and listed the assets that were the bases for Plaintiff's ineligibility for SSI from December 2009 to February 2010 on (*id.* at 122-24). The Notice recalculated Plaintiff's ineligibility for December 2009 based upon a Chase checking account containing $501 and three Chase savings accounts containing $1,199.09, $2,501, and $1,074.99, for total resources of $5,276.08. (*Id.* at 122). The Notice calculated Plaintiff's resources for January 2010 and for February 2010 onward at $4,076.99, based upon the same checking account and the latter two savings accounts. (*Id.* at 123-24). The Notice also informed Plaintiff that it replaced all previous determinations regarding eligibility for the periods it covered, in this case December 2009 to January 2010. (*Id.* at 116).

Plaintiff requested reconsideration on March 12, 2010 (SSA Rec. 35-37), and provided additional information to the SSA in connection with the review of her eligibility for benefits on November 10, 2010 (the "Redetermination Summary") (*id.* at 125-35). In the Redetermination Summary, Plaintiff claimed to own a Dime Savings Bank savings account containing $1,800 up to December 2009, which account Plaintiff indicated had been set aside for burial expenses; Plaintiff did not indicate whether any assets remained after

3

December 2009. (*Id.* at 127). Plaintiff also claimed to own one Chase checking account and three Chase savings accounts that, together, contained: $5,276.98 in December 2009; $2,101 in January 2010 through October 2010; and $1,700 in November 2010. (*See id.* at 127-28). The Redetermination Summary informed Plaintiff of her reporting obligations (*id.* at 131-33), including her obligation to report if the value of her resources exceeded $2,000 at any point (*id.* at 132).

The SSA took no further action until February 1, 2012, when it issued Plaintiff a third Notice of Planned Action (the "February 1, 2012 Notice"). (SSA Rec. 138-48). The February 1, 2012 Notice gave Plaintiff the same general information as the prior Notices, and informed her that she was ineligible for SSI benefits as of December 1, 2011, and would stop receiving payments beginning March 2012. (*Id.*). The Notice identified three Chase bank accounts — two checking, one savings — containing a total of $5,065.17 for both December 2011 and January 2012 onward. (*Id.* at 147-48). The Notice also informed Plaintiff that it replaced all previous determinations regarding eligibility for the periods it covered, though in this case it did not cover any previously determined periods. (*Id.* at 116).

On February 6, 2012, the SSA issued a Notice of Change of Payment (the "February 6, 2012 Notice") informing Plaintiff that she was ineligible for benefits for the period from January 1, 2010, through November 30, 2011. (SSA Rec. 149-77). As with the Notices of Planned Action, the Notice informed Plaintiff that it replaced all prior determinations regarding this period, thus

4

leaving in place the February 2010 Notice's determination for December 2009 and the February 1, 2012 Notice's determination for December 2011 and January 2012 onward. (*Id.* at 150). The Notice calculated Plaintiff's assets over this period at between $31,329.19 and $33,978.58 in each month, consisting primarily of cash in the amount of either $26,676.59 or $29,275.10. (*Id.* at 155-77).

On February 10, 2012, Plaintiff again filed a request for reconsideration. (SSA Rec. 220-25). As part of this request, Plaintiff submitted a statement signed on February 15, 2012. (*Id.* at 224-25). In it, Plaintiff disclaimed ownership of all but one of the bank accounts identified by the SSA. (*Id.* at 220). Plaintiff further stated that she had closed a Citibank account after using the money to pay for medical treatments, though she acknowledged having no record of these treatments. (*Id.* at 224). She went on to identify for the first time a "Sun Life insurance policy" (presumably the First SunAmerica policy identified at SSA Rec. 136), which she believed to have a surrender value of $15,000. (*Id.*). Plaintiff disclaimed any additional resources. (*Id.*). The SSA, reviewing the request for reconsideration, noted that Plaintiff claimed to have purchased the life insurance policy using some of her previous cash resources, but could not provide any evidence of this purchase or any evidence in support of her claims not to own some of the additional resources attributed to her. (*Id.* at 226-29). Accordingly, the SSA denied Plaintiff's request for reconsideration on March 14, 2012. (*Id.* at 228-29).

On May 13, 2012, Plaintiff requested that the SSA waive recovery of the overpayment. (SSA Rec. 38-45). Plaintiff repeatedly stated that she did nothing wrong and was not overpaid; she also made references to travel to Europe both for treatment and for a court appearance. (*Id.* at 38-40). She claimed that she had spent all of the assets in her bank accounts (save for $5 in a checking account) on medical treatments, and that the life insurance policy attributed to her was an annuity owned by her cousin that she could not cancel or convert to cash. (*Id.* at 40-41, 44).

On June 7, 2012, the SSA informed Plaintiff that, based upon current information, it could not waive collection of the overpayment, calculated at $34,395.80. (SSA Rec. 46-47).[2] On June 27, 2012, at Plaintiff's request, the SSA allowed Plaintiff to review her file and on the same day held an in-person conference at which Plaintiff contested the denial of the waiver of overpayment. (*Id.* at 48). The SSA determined that Plaintiff had very large balances in a Chase bank account that had been transferred from a previously undisclosed Swiss bank account and then used to purchase the life insurance policy. (*Id.*). The SSA stated that Plaintiff had claimed she was told by the Swiss bank that the insurance policy would not deprive her of SSI eligibility, and thus she had not reported it. (*Id.*). Because Plaintiff's reporting obligations had been clear, and she was clearly in violation of them, the SSA found that she was not without fault and denied her request for waiver of the overpayment. (*Id.*).

---

[2] This amount consisted of $20,575 in overpayments from 2009 to 2012, in addition to an overpayment of $19,507 from 2001, of which $13,820.80 remained outstanding. (SSA Rec. 48, 78).

6

### 2. Hearing Before the Administrative Law Judge

On June 29, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (SSA Rec. 49-51). The hearing was held on September 20, 2012. (*Id.* at 19-34). Although Plaintiff had indicated beforehand that she had a legal representative, Chantel Johnson, Plaintiff stated at the proceeding that Johnson had not shown up to the hearing, and that Plaintiff wished to proceed on her own. (*Id.* at 21-22). At the hearing, Plaintiff disclaimed ownership of all bank accounts except for one containing roughly $800; she stated that the rest had been fraudulently opened using her name and social security number, and had subsequently been closed. (*Id.* at 23-27, 29-32). Plaintiff additionally explained that she was a Holocaust survivor, and that part of the money in another account had been used to travel to Switzerland as part of an effort to collect reparations. (*Id.* at 33-34).

On January 4, 2013, ALJ Mark Hecht determined that Plaintiff had been overpaid from December 2009 to February 2012; that recovery of the overpayment was not waived; and that Plaintiff had remained ineligible for SSI benefits since March 2012. (SSA Rec. 10-18). The ALJ began by reviewing the statutory provisions and administrative rules governing eligibility for SSI, the definition of "resources," and the circumstances under which recovery of overpayment should be waived. (*Id.* at 13-15).

Turning to Plaintiff's resources, the ALJ first examined her bank accounts. He noted Plaintiff's statements that she had only one genuine account at Chase, where her SSI checks were deposited. (SSA Rec. 15-16). He

7

also noted Plaintiff's statement that she had owned another savings account at Citibank, which records indicated was closed by cash withdrawal of $3,639.14 in February 2012. (*Id.* at 16). The ALJ noted as well Plaintiff's May 2012 statement that she had possessed a burial account at Dime Bank, which she had used together with other funds to purchase airline tickets to and from Switzerland in February and March 2012. (*Id.*). In addition, Plaintiff had acknowledged in a February 10, 2012 statement that she had more than $2,000 in resources from January 2010 through January 2012; she stated that she had been misinformed by a social worker that the resource limit was $3,000, and had since used the excess resources to fund her February 2012 trip. (*Id.*). Finally, the ALJ noted two letters from Chase regarding Plaintiff's accounts: the first stated that two of the accounts at issue were indeed fraudulently opened in her name, and the second stated that Plaintiff only had one account at Chase as of September 20, 2012. (*Id.*).

The ALJ found that "the situation regarding the claimant's bank accounts is not entirely clear even now." (SSA Rec. 16). He noted that Plaintiff had acknowledged having excess resources from January 2010 to January 2012, making "the issue moot with respect to that period." (*Id.*). The ALJ then discussed Plaintiff's annuity with First SunAmerica, which records showed had a cash surrender value of $27,000 as of December 17, 2011. (*Id.* at 17). Plaintiff, according to records, had purchased the annuity in December 2009 and deposited an additional $2,000 into the account in 2010. (*Id.*). Based upon this annuity, the ALJ found that Plaintiff was ineligible for December

8

2009: because Plaintiff had used her resources to acquire the annuity in December 2009, there was no reason to believe that she did not have resources exceeding $2,000 in that month. (*Id.* at 16-17). The ALJ then found that Plaintiff was ineligible for benefits since February 2012: not only did she continue to own the annuity with a cash surrender value of $27,000, but she had also withdrawn $3,639.14 in cash from her Citibank account in February 2012. (*Id.*). Because Plaintiff had failed to show that she no longer owned either the annuity or the withdrawn cash — either of which would, alone, put her over the resource limit — she had failed to demonstrate her eligibility for SSI. (*Id.*).

Finally, the ALJ found that Plaintiff did not meet the requirements for waiver. (SSA Rec. 16-17). Plaintiff had been a recipient of SSI for more than 30 years, with many redetermination interviews with the SSA in which the eligibility rules would have been covered, and she had repeatedly been issued notices from 2009 to 2011 regarding her violation of the requirements for eligibility. (*Id.*). The ALJ found Plaintiff's claim that she was told the resource was $3,000 by a social worker to be unhelpful to her case: first, because it was not credible; second, because even if true, she should have known better than to rely on a non-SSA source of information rather than the repeated notices from the SSA; and third, because Plaintiff's resources exceeded even the $3,000 threshold throughout the relevant period. (*Id.*). Accordingly, ALJ Hecht found that Plaintiff was not without fault, rendering her ineligible for a waiver of recovery of overpayment. (*Id.* at 17).

The ALJ therefore found that Plaintiff was ineligible for SSI from December 2009 to February 2012, and was overpaid during that period; that she was not without fault in causing or accepting the overpayment; that recovery of the overpayment should not be waived; and that Plaintiff remains ineligible for SSI. (SSA Rec. 17-18). On January 10, 2014, the Appeals Council denied Plaintiff's request for review of this decision. (*Id.* at 2-4, 5-9).

**B.     The Instant Litigation**

Plaintiff filed her *pro se* Complaint seeking review of the Commissioner's decision on February 28, 2014. (Dkt. #2). Pursuant to a scheduling order issued March 6, 2014 (Dkt. #5), the Commissioner filed the administrative record (Dkt. #9), her Answer (Dkt. #10), and a motion for judgment on the pleadings (Dkt. #11, 12) on August 22, 2014. Plaintiff submitted a three-page letter response to the motion dated October 4, 2014. (Dkt. #15). The motion was fully briefed upon the submission of the Commissioner's letter in lieu of reply memorandum of law on October 29, 2014. (Dkt. #17).

## DISCUSSION

**A.     Applicable Law**

    **1.     Motions Under Federal Rule of Civil Procedure 12(c)**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard applied to a motion for judgment on the pleadings is the same as that used for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Sheppard* v. *Beerman*, 18 F.3d

147, 150 (2d Cir. 1994); *accord L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).  When considering such a motion, a court should "draw all reasonable inferences in Plaintiffs' favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'"  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 548 F.3d 82, 88 (2d Cir. 2009)).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("[W]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks omitted)).

Even where such a motion stands unopposed, as, in effect, it does here,[3] "the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law."  *Vt. Teddy Bear Co.* v. *1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (internal quotation marks omitted) (applying this standard in the context of summary judgment); *see also Wellington* v. *Astrue*, No. 12 Civ. 3523 (KBF), 2013 WL 1944472, at *2 (S.D.N.Y. May 9, 2013); *Martell* v. *Astrue*, No. 09 Civ. 1701 (NRB), 2010 WL 4159383, at *2 n.4 (S.D.N.Y. Oct. 20, 2010).  When a plaintiff proceeds *pro se,* as Plaintiff does in

---

[3]  Plaintiff's three-page handwritten opposition does not contest any of the facts relied upon by the Government.  (*See* Pl. Opp.).

11

this case, the Court is "obligated to construe [her] complaint liberally." *Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

### 2. Review of Determinations by the Commissioner of Social Security

In reviewing the final decision of the SSA, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A court must uphold a final SSA determination to deny benefits unless that decision is unsupported by substantial evidence or is based on an incorrect legal standard. *Selian*, 708 F.3d at 417 ("In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." (quoting *Talavera* v. *Astrue*, 697 F.3d 145, 151 (2d Cir. 2012))); *see also id.* ("If there is substantial evidence to support the determination, it must be upheld."). More than that, where the findings of the SSA are supported by substantial evidence, those findings are "conclusive." *Diaz* v. *Shalala*, 59 F.3d 307, 312 (2d Cir. 1995) ("The findings of the Secretary are conclusive unless they are not supported by substantial evidence." (citing 42 U.S.C. § 405(g))).

"'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151 (quoting *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard is "a very deferential

standard of review — even more so than the clearly erroneous standard." *Brault* v. *Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). To make this determination — whether the agency's finding were supported by substantial evidence — "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera*, 697 F.3d at 151 (quoting *Mongeur* v. *Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). The substantial-evidence test applies not only to the Commissioner's factual findings, but also to inferences drawn from the facts. *See, e.g.*, *Carballo ex rel. Cortes* v. *Apfel*, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999).

### 3. The Statutory Scheme Governing Overpayment of SSI Benefits

As of January 1, 1989, an individual who has no co-resident spouse is ineligible for SSI benefits if she owns resources in excess of $2,000. 42 U.S.C. § 1382(a)(3)(B); 20 C.F.R. § 416.1205(c). A resource is cash or any other liquid asset or real or personal property that an individual owns and can convert to cash to be used for support and maintenance. 20 C.F.R. § 416.1201(a). If the individual has the right, authority, or power to liquidate the property (or her share of it) and the ability to so convert it to cash within 20 days, it is considered a liquid resource. *Id.* § 416.1201(a)(1), (b). Financial institution accounts, both savings and checking, and life insurance policies are both generally considered examples of liquid resources. *See id.* § 416.1201(b). If an individual is the sole owner of an account and can withdraw the funds, there is a non-rebuttable presumption that the individual owns 100 percent of the

funds in the account. *Id.* § 416.1208(b). The SSA excludes from its calculation of resources up to $1,500 that is separately identifiable and set aside for an individual's burial and related expenses. 42 U.S.C. § 1382b(a)(2)(B); 20 C.F.R. § 416.1231. The SSA calculates life insurance policies at their cash surrender value, but discounts entirely any life insurance policy whose face value is $1,500 or less. 42 U.S.C. § 1382b(a); 20 C.F.R. § 416.1230. Finally, the determination of eligibility for SSI benefits cannot be based solely on an applicant's declaration, but must be verified from independent or collateral sources. 42 U.S.C. § 1383(e)(1)(B)(i).

Under the Act, the Commissioner is entitled to recoup an improper overpayment of SSI benefits to an individual, either by adjustment of future payments or recovery from the individual. 42 U.S.C. § 1383(b)(1)(A); *see also Chlieb* v. *Heckler*, 777 F.2d 842, 846 (2d Cir. 1985). To qualify for waiver of recovery of the overpayment, a recipient has the burden of demonstrating that she was "without fault," *and* that adjustment or recovery of the overpayment would either (i) defeat the purposes of Title XVI of the Act; (ii) be against equity and good conscience; or (iii) impede the efficient or effective administration of Title XVI due to the small amount involved. *See* 42 U.S.C. § 1383(b)(1)(B).

No showing of bad faith is required for a finding of fault; rather, an applicant is not without fault if she failed "to exercise a high degree of care in determining whether circumstances which may cause deductions from [her] benefits should be brought to the attention of the Administration." *Kennedy* v. *Apfel*, No. 96 Civ. 3295 (LAP)(SEG), 1998 WL 567676, at *4 (S.D.N.Y. June 26,

1998) (quoting 20 C.F.R. § 404.511(a)), *aff'd*, 173 F.3d 844 (2d Cir. 1999); *accord Center* v. *Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983) ("No showing of bad faith is required; rather, an honest mistake may be sufficient to constitute fault."). Even where the SSA is at fault in the overpayment, recovery should not be waived where the applicant is also at fault. *Center*, 704 F.2d at 680.

## B. Analysis

### 1. Substantial Evidence Supports the Commissioner's Finding that Plaintiff Was Overpaid SSI Benefits from December 2009 to January 2012 and Has Been Ineligible Since

There is little dispute that Plaintiff's resources exceeded $2,000 from December 2009 through January 2012. The record demonstrates that Plaintiff purchased the First SunAmerica life insurance policy, which had a cash surrender value of $27,000, on December 17, 2009. (SSA Rec. 136). Plaintiff claimed on May 13, 2012, that the policy either was jointly owned by herself and her cousin and that she could not cancel it (*id.* at 41), or belonged to her cousin and was in her cousin's name (*id.* at 44). Yet Plaintiff admitted on February 15, 2012, that she had purchased the policy (*id.* at 224), and a 2010 policy statement identified her as the sole annuitant (*id.* at 136). Moreover, Plaintiff's handwritten notes on the 2010 statement indicate her intent to dispose of the policy either by paying for her nursing home or willing it to her attorney. (*Id.*).[4] In short, beyond Plaintiff's contradictory statements, there is

---

[4] Plaintiff similarly suggests control over the annuity in her opposition, referring to the life insurance policy as "my annuity," and indicating her intent to use the proceeds "to settle down in [her] remaining years somewhere where it is cheap to live," and to split any remaining money between "the animal reserve" and the Christopher & Dana Reeve Foundation. (Pl. Opp. 2).

no objective evidence in the record to undermine the ALJ's finding that Plaintiff purchased a life insurance annuity in December 2009 with funds in her control prior to that date; that the annuity remained within her exclusive control from December 2009 to February 2012; and that Plaintiff continues to own the annuity. (*See* SSA Rec. 17-18). Thus, considering the First SunAmerica policy alone, there is substantial evidence in support of the ALJ's finding that Plaintiff was overpaid SSI benefits from December 2009 to February 2012, and remains ineligible to this day.

Moreover, Plaintiff's life insurance policy does not constitute the entirety of her resources. Plaintiff has acknowledged that she was over the resource limit from January 2010 to January 2012. (SSA Rec. 180). Though the Court need not independently address each bank account cited in the record, the SSA and then the ALJ carefully traced the assets in each account that could objectively be attributed to Plaintiff, finding that Plaintiff had bank accounts totaling more than $2,000 in December 2009 and since February 2012. (*Id.* at 16-17, 122). And the Commissioner in her memorandum of law has exhaustively documented each bank account traceable to Plaintiff, finding at least two bank accounts with a collective balance of over $17,000 as of December 2009. (Def. Br. 9). As for Plaintiff's current cash assets, multiple accounts appear to have been closed out in February 2012 with collective assets of over $5,000; Plaintiff claims, without evidence, to have used some or all of this money for medical treatments not covered by Medicaid. (*Id.* at 9-10). Plaintiff has not satisfied her burden to demonstrate that the accounts were

16

spent down or transferred rather than simply converted from one liquid resource to another, or converted for the purpose of establishing eligibility.  *See Ibrahim* v. *Astrue*, No. 09 Civ. 4496 (JFB), 2011 WL 477810, at *5 (E.D.N.Y. Feb. 4, 2011) ("The burden is therefore on the individual claiming eligibility for SSI to rebut the presumption that a resource was transferred to establish SSI eligibility." (citing 20 C.F.R. § 416.1246(e)).  There is thus substantial evidence to find, even without considering the First SunAmerica life insurance policy, that Plaintiff has had resources in excess of $2,000 from December 2009 through the present.

> 2. **Substantial Evidence Supports the Commissioner's Finding that Plaintiff Is Not Entitled to Waiver of Recovery of the Overpayment**

As noted *supra*, "the district court must uphold a decision by the Secretary that a claimant was not without fault if it is supported by substantial evidence in the record as a whole, because that determination is factual in nature." *Valente* v. *Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).  The ALJ found that Plaintiff had received a number of notices over the years explaining the eligibility requirements for SSI benefits, and several specific notices between December 2009 and February 2012 explaining the requirements in detail and the reasons that Plaintiff was ineligible to receive benefits.  (SSA Rec. 16-17).  Pursuant to the SSA's regulations, a recipient is not without fault for an overpayment if (a) she failed to furnish information that she knew or should have known was material; (b) she made an incorrect statement that she knew or should have known was incorrect; or (c) she did

not return a payment that she knew or should have known was incorrect.  20 C.F.R. § 416.552.  Plaintiff is demonstrably not without fault under each of these standards: she failed to inform the SSA of her life insurance policy until February 2012, despite receiving repeated notices listing it as a qualifying resource; she made incorrect statements regarding both her bank accounts and the ownership and value of the life insurance policy; and she failed to return 27 months' worth of SSI benefits despite being informed that she was ineligible and despite explicitly acknowledging her ineligibility for 25 of those months.

The Court is not insensitive to Plaintiff's age and life circumstances.[5]  Yet even taking these factors into account, Plaintiff has entirely failed to demonstrate why she is without fault, aside from claiming to have received incorrect advice from *outside* the SSA about the resource limit and the significance of her life insurance policy.  *Cf.* 20 C.F.R. § 404.510a ("Where an individual or other person on behalf of an individual accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration (or other governmental agency which the individual had reasonable cause to believe was connected with the administration of benefits under title II or title XVIII of the Act) with respect to

---

5    Courts have noted that "the 'fault' determination has both objective and subjective components," such that "the Commissioner must consider 'all pertinent circumstances, including the individual's age and intelligence, and education, and any physical, mental or linguistic limitations.'"  *Gadayeva* v. *Comm'r of Soc. Sec.*, No. 11 Civ. 2961 (BMC), 2012 WL 6212701, at *2 (E.D.N.Y. Dec. 13, 2012) (quoting 20 C.F.R. § 404.507).

the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto, ... such individual, in accepting such overpayment, will be deemed to be without fault."). Plaintiff knew or should have known of her ineligibility to receive benefits, of the requirement to report her additional resources, and of the impropriety of her receipt of benefits. Accordingly, substantial evidence supports the Commissioner's finding that Plaintiff was not without fault in her overpayment, and thus not entitled to waiver of recovery of said overpayment. Because the Court finds that Plaintiff was not without fault, it "need not consider whether recovery of the overpayments would defeat the purpose of [the Act] or would be against equity and good conscience, since those factors come into play only if the recipient is without fault." *Chlieb*, 777 F.2d at 846.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed, and Defendant's motion for judgment on the pleadings is GRANTED. The Clerk of Court is directed to terminate the motion pending at Docket Entry 11 and to close this case.

SO ORDERED.

Dated: July 16, 2015
       New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge